UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DIANE R. CORCHADO,

                                        Plaintiff,

               -vs-                                        06-CV-0809-JTC

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                                        Defendant.

_____

          Plaintiff Diane Corchado initiated this action pursuant to section 405(g) of the Social

Security Act, 42 U.S.C. § 405(g), to review the final determination of the Commissioner of

Social Security (the "Commissioner") denying plaintiff's application for disability insurance

benefits.   Both parties have filed motions for judgment on the pleadings pursuant to

Rule 12(c) of the Federal Rules of Civil Procedure (Items 6 and 7).   For the following

reasons, the Commissioner's motion is denied, plaintiff's motion is granted, and the case

is remanded to the Commissioner.

## BACKGROUND

          Plaintiff was born on June 9, 1953 (Tr. 64).[1]   She applied for disability insurance

benefits on November 26, 2003, alleging disability since October 1, 2002 due to back and

leg pain, diabetes, asthma, headaches, and arthritis (*id.*).   Her application was denied

initially on May 7, 2004 (Tr. 38 ).   She requested a hearing, which was held on June 15,

2005 before Administrative Law Judge ("ALJ") Douglas W. Abruzzo (Tr. 383-439).   Plaintiff

---

[1]References preceded by "Tr." are to page numbers of the transcript pf the administrative record,
filed by defendant as part of the answer to the complaint.

appeared and testified at the hearing, and was represented by attorney Thomas Feron, Esq.  Mr. Timothy Janikowski, a vocational expert, also testified at the hearing.

In a written decision dated July 26, 2005 (Tr. 16-26), the ALJ found that plaintiff was not under a disability within the meaning of the Social Security Act.  Following the sequential evaluation process outlined in the Social Security Administration Regulations (*see* 20 C.F.R. § 404.1520), the ALJ reviewed the medical evidence and determined that plaintiff's impairments, including obesity, lumbar disc disease, asthma, migraine headaches, and bipolar disorder, while severe, did not meet or equal the criteria of an impairment listed in the Regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 17, 24).  The ALJ then determined that while plaintiff's impairments precluded her from performing any of her past relevant work (including receptionist, nursing assistant, dialysis technician, psychiatric aide, home attendant, and telemarketer), she had the residual functional capacity for a wide range of light work,[2] reduced by the following limitations:

> lifting and carrying objects weighing more than 20 pounds, more than occasional stooping or crouching, any climbing of ladders, ropes or scaffolds, more than occasional pushing/pulling with the lower extremities including the operation of pedals requiring more than five pounds of pressure, even moderate exposure to fumes, odors, gases, hot or cold temperature

---

[2]As defined in the Regulations, "light work:"

involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

extremes, extremes of wetness/humidity; unprotected heights, dangerous machinery, or environments with poor ventilation, or more than occasional interaction with supervisors, coworkers, or the general public . . . .

Tr. 22.

In making this determination, the ALJ referred to the opinions of two of plaintiff's treating physicians and her treating psychiatrist, which indicated a residual functional capacity of "less than [a] full range of sedentary work activity on a sustained basis" (*id.*). However, the ALJ found these opinions to be "inconsistent with the clinical and objective findings of record" (*id.*), and afforded them "minimal weight" (Tr. 23).  Instead, the ALJ relied heavily on the report of Dr. Steven Dina, who conducted a one-time consultative examination on February 10, 2004 (*see* Tr. at 17-19, 21-23), which placed "limitations on the claimant consistent with at least light work activity" (Tr. 18).

The ALJ also considered plaintiff's allegations and testimony regarding her functional limitations, but found plaintiff to be "not fully credible" in this regard (Tr. 25). Considering the plaintiff's age of 52 years old, her education level,[3] and the testimony of the vocational expert, the ALJ concluded that there are a significant number of jobs in the national economy that plaintiff could perform (*id.*).   The ALJ's decision became the Commissioner's final determination on October 10, 2006, when the Appeals Council denied plaintiff's request for review (Tr. 4-7 ).

Plaintiff then filed this action on December 8, 2006, and both parties moved for judgment on the pleadings.   Plaintiff contends that the Commissioner's determination should be reversed because the ALJ failed to properly evaluate the opinions of the

---

[3]The ALJ found that plaintiff had a high school education (Tr. 24, 25).  However, plaintiff testified at her hearing that, in addition to her high school diploma, she has an associates' degree (Tr. 390).

plaintiff's treating sources, and failed to properly assess plaintiff's credibility (*see* Item 6). The Commissioner argues that the ALJ's determination must be upheld because it is supported by substantial evidence in the record (*see* Item 8).

For the reasons that follow, the Commissioner's motion is denied, and plaintiff's motion is granted.

## DISCUSSION

### I.    Scope of Judicial Review

The Social Security Act states that upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004).  Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try a case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401.  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the

light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1141 (E.D. Wis. 1976), *quoted in Gartmann v. Secretary fo Health and Human Services*, 633 F. Supp. 671, 680 (E.D.N.Y. 1986).   The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence.   *Smith v. Massanari*, 2002 WL 34242375, at *4 (W.D.N.Y. March 17, 2002) (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)).

## II.    Standard for Determining Eligibility for Disability Benefits

To be eligible for disability insurance benefits under the Social Security Act, plaintiff must show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."   42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1505(a).   The Regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits.   *See* 20 C.F.R. § 404.1520.   First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.   If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ."   20 C.F.R. § 404.1520(c).   If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of

an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing her past relevant work.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and residual functional capacity.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari*, 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).  The Commissioner ordinarily meets her burden at the fifth step by resorting to the medical vocational guidelines set forth at 20 C.F.R. Pt. 404, Subpt. P, App. 2 (referred to as the "Grids").  However, where the Grids fail to describe the full extend of a claimant's physical limitations, the ALJ must "introduce the testimony of a vocational expert (or some other similar evidence) that jobs exist in the economy which claimant can obtain and perform."  *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986); *see also Rosa*, 168 F.3d at 78.

In this case, the ALJ determined at step five of the sequential analysis that there are a significant number of jobs in the national economy that plaintiff could obtain, given her residual functional capacity to perform a wide range of light work.  In reaching his conclusion as to plaintiff's residual functional capacity, the ALJ gave "minimal weight" to

the opinions of Drs. Linda Benjamin, Sylvia Regalla, and Horacio Capote, three of plaintiff's treating physicians, and instead relied heavily upon the report of Dr. Steven Dina, a one-time consultative physician (*see* Tr. 22-23).   As the following discussion indicates, this conclusion was based upon an erroneous application of the requirements for evaluating the medical opinions of treating and consultative sources, as set forth in the Regulations and controlling case law.

## III.   Evaluation of Medical Opinion Evidence

The Social Security Regulations require that the opinion of a claimant's treating physician which reflects judgments about the nature and severity of the claimant's impairments must be given "controlling weight" by the ALJ, as long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ."  20 C.F.R. § 404.1527(d)(2); *see also Rosa*, 168 F.3d at 78-79.  As explained in the Regulations:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2).

If the opinion of the treating physician as to the nature and severity of the claimant's impairment is not given controlling weight, then the ALJ must apply several factors to decide how much weight to give the opinion, including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support

of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Clark v. Commissioner of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (citing 20 C.F.R. § 404.1527(d)(2)).   The ALJ must "always give good reasons" in the notice of determination or decision for the weight given to the treating source's opinion, 20 C.F.R. § 404.1527(d)(2), and "cannot arbitrarily substitute his own judgment for competent medical opinion." *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983), *quoted in Rosa*, 168 F.3d at 79; *see also Rooney v. Apfel*, 160 F. Supp. 2d 454, 465 (E.D.N.Y. August 14, 2001).

As explained by the Social Security Administration, when the ALJ's determination:

> is not fully favorable, *e.g.*, is a denial . . .[,] the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996).

The findings of a "State agency medical or psychological consultant or other program physician or psychologist" can constitute substantial evidence to challenge the opinions of a claimant's treating physicians.   20 C.F.R. § 404.1527(f)(2)(ii); *see, e.g., McCarthy v. Astrue*, 2007 WL 4444976, at *7 (S.D.N.Y. December 18, 2007).   However, when the ALJ rejects a treating physician's opinion as to the nature and severity of the claimant's impairments in favor of the opinion of a consulting physician, the hearing determination must reflect that the ALJ evaluated the consultant's findings using the relevant factors enumerated in the treating physician regulations, such as:

the [consultant]'s medical specialty and expertise in [Social Security Administration] rules, the supporting evidence in the case record, supporting explanations provided by the [consultant], and any other factors relevant to the weighing of the opinions.  Unless the treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a [consultative physician], as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 404.1527(f)(2)(ii); *see Dioguardi v. Commissioner of Social Sec.*, 445 F. Supp. 2d 288, 295-98 (W.D.N.Y. 2006) (ALJ failed to adequately explain weight given to treating and consulting physicians).

In this case, the record reflects that Dr. Linda Benjamin was plaintiff's primary care physician at the time of the hearing in 2005 (*see* Tr. 290), and Dr. Sylvia Regalla was plaintiff's primary care physician between approximately 1992 and 2004 (*see* Tr. 171).  In a "Medical Source Statement" dated May 23, 2005 (Tr. 353-58), Dr. Benjamin reported that plaintiff could sit, stand, or walk about for less than fifteen minutes continuously, and for less than one hour cumulatively during an eight-hour day (Tr. 353-54).  She needed to rest for significant periods (more than six hours during an eight-hour day) in addition to normal breaks to relieve pain and fatigue (Tr. 354-355).  Her ability to lift and carry any amount of weight was described as "rarely/none" (Tr. 355).  She could balance for less than fifteen minutes, and could rarely or never stoop (Tr. 356).  Her ability to reach, push, or pull was limited due to chronic neck/shoulder pain, and her ability to handle objects was limited because she was "shaky with anxiety attacks" (Tr. 356).  She also had environmental restrictions with respect to heights, moving machinery, temperature extremes, dust, fumes, humidity, chemicals, noise, and vibrations, all of which caused exacerbation of negative symptoms involving severe headaches, sinus congestion, chronic pain, or fatigue (Tr. 357).

Dr. Benjamin stated that these functional restrictions had existed and persisted since October 2002 (*id.*).   She premised this assessment on her diagnosis of plaintiff's impairments, which included spinal stenosis, chronic pain, headaches, bipolar disorder, increased blood pressure, type 2 diabetes mellitus, chronic sinusitis, and arthritis (Tr. 358).

The record also reflects that Dr. Andrew Cappuccino, an orthopedic surgeon, treated plaintiff on several occasions for her lower back problems.   For example, on November 22, 2002, Dr. Cappuccino reported that plaintiff "suffers from advanced spinal canal stenosis at the L4-5, L5-S1 level due to disc injury at those levels, as well as posterior facet joint arthropathy" (Tr. 138).   Plaintiff also complained of bilateral foot numbness and leg pain.   Dr. Cappuccino suggested facet joint injections to help with her discomfort, but surgical intervention appeared imminent (*id.*).

On July 6, 2003, Dr. Cappuccino reported the results of a recent CT scan, which showed tight focal stenosis at the L4-5 and L5-S1 levels (Tr. 136).   Her back pain was severe and persistent, and leg pain was worse.   She had neurologic weakness in her left dorsiflexors and plantar flexors of grade 4/5, as well as sensory paresthesia and absence of left ankle reflex, and sensory paresthesia in the right leg at L5 and S1.   Lumbar range of motion was markedly limited.   Dr. Cappuccino recommended decompression surgery, and ordered authorization for an updated MRI.   In Dr. Cappuccino's opinion, plaintiff "remains disabled at this time" (*id.*).

On October 10, 2003, Dr. Cappuccino reported the results of an MRI showing lateral recess stenosis and facet hypertrophy, but no gross disc herniation or disc pathology (Tr. 134).   However, there were no positive findings on the discogram for lower back pain.   There was evidence of retrolisthesis on flexion extension x-rays at the L5-S1

level.   She had neuropathic pain in both lower extremities, and "clear-cut" L5-S1 symptomatology.   Her range of motion was limited, and she could no longer tolerate her pain.  Dr. Cappuccino noted that plaintiff had "failed physical therapy, chiropractic, facet injections, and pain management and trigger point injections" (*id.*).  He recommended an updated EMG to rule out diabetic neuropathy.

On April 13, 2004, Dr. Cappuccino reported that the EMG was negative for definitive radiculitis with respect to the lumbar spine, and there was no evidence of polyneuropathy. On physical examination plaintiff demonstrated a diminished range of lumbar motion with forward and retroflexion, causing low back tightness. There was tenderness at the lumbosacral junction and sacro-iliac joints bilaterally.  Dr. Cappuccino's diagnosis remained "known disc disease at the L4-5 and to a greater extent L5-S1 level" (Tr. 131).  She had exhausted all forms of conservative care, and Dr. Cappuccino once again discussed surgical options with her.  However, plaintiff stated that since her condition was "tolerable," she did not feel that invasive surgical intervention was necessary, and Dr. Cappuccino agreed (*id.*).

Plaintiff also received psychiatric treatment during the early part of 2005 from Dr. Horacio Capote (*see* Tr. 305-10).  Dr. Capote's initial diagnosis was bipolar disorder, panic disorder with agoraphobia, generalized anxiety disorder, and social anxiety disorder, with severe stressors and Global Assessment of Functioning of 40[4] (Tr. 309).  In a "Medical

---

[4]The Global Assessment of Functioning ("GAF") is a numeric scale used by mental health clinicians and doctors to rate the social, occupational, and psychological functioning of adults.  *Esteves v. Barnhart*, 492 F. Supp. 2d 275, 279 n.2 (W.D.N.Y. 2007) (citing  Diagnostic and Statistical Manual of Mental Disorders, DSM-IV-TR, 4th ed., p. 34 (2000)).  A score of 40 indicates "some impairment in reality testing or communication (*e.g.*, speech is at times illogical, obscure, or irrelevant ), OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (*e.g.*, depressed man avoids friends, neglects family, and is unable to work . . .)."  http://psyweb.com/Mdisord/DSM-

Assessment of Ability to do Work-Related Activities (Mental)" dated June 2, 2005, Dr. Capote rated plaintiff's ability to make occupational adjustments to a job as "fair" with respect to following work rules, relating to co-workers, and functioning independently, and "poor or none" in terms of dealing with the public, using judgment, interacting with supervisors, dealing with work stresses, and maintaining attention or concentration (Tr. 372). Her ability to make performance adjustments to a job was rated as "fair" with respect to understanding and carrying out simple job instructions, and "poor or none" with respect to understanding, remembering, and carrying out both complex and detailed but not complex job instructions (Tr. 373). Her ability to adjust personally and socially was rated as "fair" in terms of maintaining personal appearance and relating predictably in social situations, and "poor or none" in terms of behaving in an emotionally stable manner or demonstrating reliability (*id.*).

Significantly, in his written determination, ALJ Abruzzo did not even mention Dr. Cappuccino's treatment of plaintiff or his assessment of her lumbar spine problems, and the ALJ only obliquely mentioned Dr. Benjamin's assessment of plaintiff's functional limitations. Paying no more than lip service to the Regulations and Social Security Rulings regarding proper evaluation of treating source evidence, the ALJ found Dr. Benjamin's opinion to be "inconsistent with the clinical and objective findings of record" (Tr. 22), referring specifically to the report of the one-time consultative internal medicine examination conducted by Dr. Dina on February 10, 2004 (*see* Tr. 187-90). Similarly, the ALJ found Dr. Capote's assessment of plaintiff's mental capacity to be inconsistent with

---

IV/jsp/Axis-V.jsp; *see also Vera v. Barnhart*, 2007 WL 756577, at *1 n.7 (S.D.N.Y. March 13, 2007).

the one-time consultative "adult psychiatric evaluation" by Dr. Renee Baskin-Creel, Ph. D., which was also conducted on February 10, 2004.  The ALJ did not indicate whether he considered any of the relevant factors set forth in the Regulations for weighing consultative opinions against the opinions of plaintiff's treating sources, such as the length, nature, or extent of any particular treatment relationship, whether or not the medical consultants had any particular specialities or expertise in making Social Security disability determinations, or any other factor that might help clarify the reasons for the minimal weight he gave to the treating sources' medical opinions.

In this court's view, the ALJ's assessment of the opinions provided by treating and consultative sources in this case, considered along with his failure to even mention plaintiff's treating orthopedic surgeon's reports regarding the results of MRI's, CT scans, discograms, and other diagnostic tests conducted over the course of several years, falls far short of the Social Security Administration's requirements for evaluating the opinions of medical sources, as outlined above.  Simply stated, when the opinions of treating sources which reflect medical judgments about the nature and severity of the claimant's impairments are rejected in favor of the opinions of one-time consultants or other non-treating sources, the written decision must make the ALJ's reasons sufficiently clear to allow for meaningful review.  This was not done here.

Based on this analysis, and upon careful review of the entire administrative record, the court finds that the ALJ's determination was based on an erroneous application of the regulatory requirements for assessing the medical opinions of the claimant's treating and consultative sources, with the result that the ALJ improperly disregarded highly probative evidence of plaintiff's disability–namely, the opinions of Dr. Benjamin, Dr. Cappuccino, and

-13-

Dr. Capote reflecting their judgments about the nature and severity of plaintiff's impairments, as well as plaintiff's residual functional capacity to engage in substantial gainful employment.

This error also resulted in the presentation of hypothetical questions to Mr. Janikowski, the vocational expert who testified at the hearing, which did not reflect the full extent of the plaintiff's capabilities and impairments. *See Mikol v. Barnhart*, 494 F. Supp. 2d 211, 226 (S.D.N.Y. 2007) (vocational expert testimony constitutes substantial evidence to support ALJ's findings only when based on properly phrased hypothetical questions which reflect full extent of claimant's capabilities and impairments); *see also Mathews v. Barnhart*, 220 F. Supp. 2d 171, 175 (W.D.N.Y. 2002) (vocational expert testimony "is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job.").

As counseled by the Second Circuit:

> [W]e emphasize that under the regulations, *see* 20 C.F.R. § 404.1527(d)(2), the Commissioner is required to provide "good reasons" for the weight [ ]he gives to the treating source's opinion. This requirement greatly assists our review of the Commissioner's decision and "let[s] claimants understand the disposition of their cases." We do not hesitate to remand when the Commissioner has not provided "good reasons" for the weight given to a treating physicians [sic] opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004) (citing *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998); quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

Accordingly, this matter is remanded to the Commissioner for reconsideration of plaintiff's claim under the regulatory requirements and legal principles discussed herein.

**<u>CONCLUSION</u>**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Item 7) is denied, and plaintiff's motion for judgment on the pleadings (Item 6) is granted.  Pursuant to 42 U.S.C. § 405(g), sentence four, the matter is remanded to the Commissioner for further proceedings consistent with this decision.

The Clerk of the Court is directed to enter judgment in favor of the plaintiff.

So ordered.

                \s\ John T. Curtin

                JOHN T. CURTIN
                United States District Judge

Dated:   March 5    , 2008
p:\opinions\06-809.feb2008